UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JANELLE FRAZIER,                                                                                           PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:20-CV-578-TSL-RPM

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,                                                                                       DEFENDANT

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On August 31, 2020, plaintiff Janelle Frazier ("Frazier") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the defendant Andrew Saul, Commissioner of Social Security ("Commissioner"), of her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Doc. [1].[1]

### II.   Procedural History

On December 19, 2016, Frazier filed for SSI. Doc. [10], at 20, 222. The Social Security Administration ("Administration") denied Frazier's application initially and upon reconsideration. *Id.*, at 153–71. Thereafter, Frazier requested an in-person hearing before an Administrative Law Judge ("ALJ"). *Id.*, at 192. On June 25, 2019, Frazier had such a hearing. *Id.*, at 96–137. On July 17, 2019, the ALJ ruled that Frazier was not entitled to SSI. *Id.*, at 17. Thereafter, Frazier filed a timely appeal to the Appeals Counsel, which denied her request for review, and the appeal, on July 24, 2020. *Id.*, at 6–9. This action followed. Doc. [1].

---

[1] The Court notes that Kilolo Kijakazi is now the Acting Commissioner of Social Security.

1

### III.   ALJ's Opinion

In his opinion, the ALJ made the following findings of fact. First, the ALJ concluded that Frazier has not engaged in substantial gainful activity since December 19, 2016. Doc. [10], at 22. The ALJ further found that Frazier suffered from several "severe" medical impairments: status post myocardial infarctions, coronary artery disease, chronic obstructive pulmonary disease ("COPD"), and a lumbar compression fracture. *Ibid.* At step three, the ALJ concluded that Frazier did not suffer from a severe impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, at 24. However, the ALJ did not provide any discussion of his finding. *Ibid.*

The ALJ next determined Frazier's residual functional capacity ("RFC"). *Id.*, at 24–28. He concluded that Frazier could perform "light work," as defined in 20 C.F.R. § 416.967(c), with certain additional limitations. *Ibid.* The ALJ indicated that Frazier could never "climb ladders, ropes, and scaffolds." *Id.*, at 25. Furthermore, she would require a sit/stand option wherein she could sit for one hour and stand/walk for 20 minutes at a time throughout the course of an eight-hour workday. *Id.*, at 24–25. Likewise, she should avoid concentrated exposure to "pulmonary irritants such as dust, smoke, fumes, and strong odors." *Id.*, at 25. Finally, she could occasionally "climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." *Ibid.*

At step four, the ALJ concluded that Frazier has no past relevant work. Doc. [10], at 29. At step five, the ALJ found that Frazier was a "younger" individual, aged 18–49, because she was 43 years old when she filed for SSI. *Ibid.* Further, the ALJ found that Frazier has a limited education and can communicate in English. *Ibid.* Thereafter, the ALJ noted that job skill transferability was not material to determining disability because she had no past relevant work. *Ibid.* Finally, the ALJ

concluded that, considering Frazier's age, education, work experience, and RFC, there are jobs that exist in significant numbers, around 400,000, in the national economy that she can perform, including as an amusement recreational attendant, cashier, and surveillance system monitor. *Id.*, at 29–30. Thus, the ALJ concluded that Frazier was not "disabled" under the SSA. *Id.*, at 30.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, ––– U.S. –––, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation omitted). It is "more than a mere scintilla and less than a preponderance.'" *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quotation omitted). Finally, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

## V. Five-Step Process Generally

A claimant is "disabled" as defined in the SSA if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. The steps include: "(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the

impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271–72).

During the first four steps, the burden of proof is on the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that the claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–2 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that she could not perform the alternative work identified. *Id.* at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "A finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

## VI. ANALYSIS

The Court's analysis begins and ends with Frazier's argument that her impairments are consistent with Listing 4.04C for ischemic heart disease. Doc. [12], at 9. The Commissioner presents no argument in opposition. Doc. [13]. Turning to the ALJ's step three analysis, he stated:

> The claimant's impairments while severe do not reach the level of severity required to meet or equal any of the relevant listings under the Listing of Impairments.
>
> [Doc. [10], at 24.]

The ALJ did not provide any further discussion at this step. *Ibid.* Self-evidently, the ALJ's step three analysis is wholly conclusory.[2] By contrast, Frazier's medical records reflect a significant history of cardiovascular issues.

---

[2] In passing, the Court notes that, during his opening statement at Frazier's ALJ hearing, Frazier's counsel stated the following: "She with—with her heart—I've read the listing for it, thoroughly. I don't think she meets the listing." Doc. [10], at 99. However, the ALJ did not reference this statement in his decision. The Commissioner does not rely

4

For one, on December 12, 2016, Frazier was admitted to the hospital with complaints of severe chest pain. *Id.*, at 492. An electrocardiogram test ("EKG") revealed "total occlusion of the [left circumflex artery] LCx below the [obtuse marginal artery] OM2," i.e. an inferior ST elevation myocardial infarction. *Id.*, at 26, 491, 529. *Id.*, at 492. During emergency surgery, Charles Davenport, MD ("Dr. Davenport") "revascularized" her left circumflex artery with a stent and opined that she needed an implantable cardioverter-defibrillator ("ICD"); she had an ICD implanted on December 16, 2016. *Id.*, at 492, 520, 535–37, 549. At this time, her ejection fraction was 50%. *Id.*, at 520, 529. Furthermore, after losing consciousness on April 6, 2017, Frazier was admitted to the hospital. Doc. [10], at 672–88. While Frazier did not suffer a heart attack, a cardiac catheterization revealed that she had a 75% occlusion in her left descending coronary artery and a 90% proximal occlusion of her diagonal artery with a small thrombus. *Id.*, at 673. She had an ejection fraction of 40%. *Id.*, at 674.

Thereafter, on February 7, 2018, Frazier was admitted to the hospital after suffering from "nausea[,] vomiting, chest pain described as tightness and pressure," and other symptoms consistent with her previous heart attack. Doc. [10], at 928. A cardiac catherization revealed that she suffered from "severe obstructive coronary artery disease" status "post multiple PTCA" and she underwent stent prefusion treatment. *Id.*, at 27, 928. Upon discharge, she was diagnosed with a non-ST-elevation myocardial infarction. *Id.*; Doc. [10], at 27.

Finally, Frazier was hospitalized on March 21, 2019 after complaining of severe chest pain, accompanied by sweating, nausea, and vomiting. Doc. [10], at 1151. An EKG found evidence of cardiac changes indicative of ischemia. *Id.*, at 1151. A cardiac catheterization revealed significant

---

on this statement in its argument before the Court, either. Doc. [13]. It is well-established that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Therefore, the Court concludes that this statement had no bearing on the ALJ's decision.

stenosis. *Id.*, at 1173–74. During the left coronary artery cineangiography,[3] Dr. Davenport observed that she had 75% stenosis in her obtuse marginal branch ("OM1") and 30% stenosis in her OM2. *Ibid.* During the right coronary artery cineangiography, Dr. Davenport observed that she had 75% to 80% stenosis in her right coronary artery. *Id.*, at 1174. At that time, he also observed that she had a "severely impaired" ejection fraction of 25%.[4] *Ibid.*

Ultimately, Frazier's extensive medical records showing significant cardiovascular issues and the ALJ's "bare conclusion" prevents the Court from undertaking meaningful judicial review of the ALJ's step three analysis. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). *See also Heidelberg v. Saul*, No. 2:18–CV–187–KS–FKB, 2020 WL 5837028, at *4 (S.D. Miss. July 30, 2020), *adopted*, No. 2:18–CV–187–KS–FKB, 2020 WL 5821974 (S.D. Miss. Sept. 30, 2020); *Pearson v. Comm'r of Soc. Sec.*, No. 1:20–CV–166–HSO–RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) (explaining need for adequate discussion), *adopted*, No. 1:20–CV–00166–HSO–RPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021).

Turning to the harmless error analysis, it is well-established that a plaintiff who meets or equals one of the Listings is entitled to a finding of disability. *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). Frazier has put forth illustrative evidence suggesting that she may meet or equal one of the Listings. *Heidelberg*, 2020 WL 5837028, at *4. In particular, she identifies the following Listing 4.04C requirement, "70 percent or more narrowing of another nonbypassed coronary artery[,]" 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.04C, and notes

---

[3] "Cineangiography" is "the photographic recording of fluoroscopic images of the blood vessels by motion picture techniques." *Rangel v. Astrue*, No. CIV.A. H–08–2246, 2009 WL 2971129, at *8 n.7 (S.D. Tex. Sept. 14, 2009).
[4] While a "normal" ejection fraction is between 55% and 75%, an ejection fraction below 30% demonstrates "severe" systolic dysfunction. *Mejia v. Astrue*, 719 F. Supp. 2d 328, 340 & n.22 (S.D.N.Y. 2010) (citations omitted). *See also Fiorante v. Comm'r of Soc. Sec.*, No. 2:16–CV–05731 (ADS), 2018 WL 3057705, at *6 (E.D.N.Y. June 19, 2018).

that a 2019 catherization revealed that she suffered from a 75% stenosis in her "right coronary artery," Doc. [10], at 1174.[5] In opposition, the Commissioner does not address whether Frazier meets or equals one of the Listings. Doc. [13]. Furthermore, as noted above, Frazier's medical records reflect that she has a significant history of cardiovascular issues. She has suffered at least two heart attacks. *Id.*, at 491, 529, 928, 1150. Multiple stents have been placed in her arteries to clear repeated blockages; she had an ICD implanted. *Id.*, at 492, 520, 535–37, 549. More recently, in 2018, she was declared "unsuitable" for a percutaneous transluminal coronary angioplasty ("PTCA"). *Id.*, at 791. Then, in 2019, she suffered from a "severely impaired" ejection fraction of 25%. *Id.*, at 1154. In light of the above, the Court cannot determine whether the ALJ's step three finding is supported by substantial evidence. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Therefore, remand is required. *See*, *e.g.*, *Heidelberg*, 2020 WL 5837028, at *4 (recommending remand where plaintiff put forth some evidence that she met Listing, her medical records showed significant relevant medical issues, and ALJ did not explain his step three decision). *See also Griffith v. Berryhill*, No. 18–CV–3248, 2019 WL 3307037, at *8 (C.D. Ill. July 23, 2019); *Wynn*, 2018 WL 6977711, at *5; *Austin*, 2018 WL 878525, at *6; *Notaro v. Berryhill*, No. 16–CV–603,

---

[5] This Court does not read *Audler* to state that a plaintiff *must always* demonstrate every element of a Listing to succeed before this Court. *Compare Heidelberg*, 2020 WL 5837028, at *4, *with Garcia v. Astrue*, No. CIV. M–08–264, 2012 WL 13716, at *15 (S.D. Tex. Jan. 3, 2012). In *Audler*, the Fifth Circuit simply held that the plaintiff's *prima facie* showing that appeared to satisfy the Listing was sufficient. *Audler*, 501 F.3d at 448–49. The panel did not hold that the plaintiff can *only* succeed on appeal upon proving all elements. *Ibid.* Furthermore, the panel relied, in part, on *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996), wherein the Tenth Circuit remanded because the ALJ completely failed to undertake a step three analysis. *Clifton*, 79 F.3d at 1009–10. Surely, *Audler* does not suggest that the ALJ can completely ignore his regulatory obligation to analyze highly relevant medical records at step three. *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). Indeed, at the administrative level, the plaintiff's only burden of proof relates to *furnishing* medical records, not *analyzing* step three—a responsibility within the sole province of the ALJ. *See*, *e.g.*, *Austin v. Comm'r of Soc. Sec.*, No. CV 16–1462 (ES), 2018 WL 878525, at *6 (D.N.J. Feb. 14, 2018). Shifting the ALJ's *entire* regulatory responsibility to the plaintiff on appeal encourages noncompliance with important regulatory obligations. *Wynn v. Berryhill*, No. CV 317–048, 2018 WL 6977711, at *5 (S.D. Ga. Dec. 4, 2018), *adopted*, No. CV 317–048, 2019 WL 122996 (S.D. Ga. Jan. 7, 2019). Likewise, the main salutary goal of the harmless error analysis is not served here—the ALJ's error is not an imperfect analysis, it is a complete absence of any analysis. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).

2017 WL 4324690, at *3 (W.D.N.Y. Sept. 29, 2017) (collecting cases); *James v. Colvin*, No. 3:11–CV–640–S, 2013 WL 4096977, at *6–*7 (W.D. Ky. Aug. 13, 2013).[6]

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the case remanded for further proceedings.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

---

[6] Since remand is appropriate, the Court does not reach Frazier's other arguments. *Pearson*, 2021 WL 3708047, at *7 n.7 (collecting cases).

**SO ORDERED AND ADJUDGED**, this the 3rd day of February 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE